Your Honor, this is the second case on the morning call, 2-11-11-11. Patrick Engineering v. Old Republic General Insurance On behalf of Patrick Engineering, Mr. Ryan Armstrong On behalf of Commonwealth Edison, Mr. William McVist On behalf of Applebee, Mr. Christopher Bell Both sides ready to proceed? And gentlemen, do you wish to divide your time? Yes, Your Honor. Okay, and whoever wishes to proceed first, go ahead. May it please the Court, my name is William McVist and I'm representing Commonwealth Edison in this case. As mentioned, we will be dividing our time. I'm going to be dealing with the arguments on the Additional Insured Clause and the impact of the Old Republic's interpretation of the Professional Liability Clause on the Additional Insured Clause. And then Mr. Armstrong will be dealing with the separation of insurers and the specific interpretation of the Professional Liability Exclusion. Your Honors, Joseph Heller in his class of 2002 described a situation in which airmen wanted to get out of having to fly duties because they thought it was insane to go up and fly these military missions. And the psychiatrist said, well, yes, anybody who would want to go up and fly those missions must be insane. Well, so they wanted to get their Section 8 discharge based on that. And, of course, what happened was they said, but if you want to get out on a Section 8 discharge, then you must not be insane. That's effectively what Patrick's or what Old Republic's interpretation of this insurance policy is doing. Essentially, what they're saying is, in order for ComEd to have additional insured coverage, the accident, the bodily injury, had to arise out of Patrick Engineering's professional work for Commonwealth Edison. But if it did arise out of Patrick Engineering's professional work for Commonwealth Edison, there's no coverage because it's excluded under the Professional Liability Clause. Catch 22. That's it. There's no coverage. That's an illusory coverage promise, and the Illinois Supreme Court and the courts of this state have made it clear that that's not permissible under Illinois law. Well, this type of a claim certainly would be covered under a professional liability policy. I'm sorry? Why wouldn't you be – why wouldn't Patrick have tried to include you as some type of an insured under that? Well, that may be, but we're here on a general liability policy, and I don't know whether we are. We're not a named insured on the professional liability policy because Commonwealth Edison was not doing professional liability work. And Commonwealth Edison's work was not the sort of work that would be covered under a professional liability exclusion or under a professional liability policy. So we need a general liability insurance because that's the type of work we were doing. And that's why we believe that, of course, the separation of insurance provision of this policy would make it so that Commonwealth Edison would have, and there are several cases which suggest that in those kind of situations, it's the work of the insured, of the additional insured that needs to be determined. If we were doing professional life or professional work, if we were doing engineering and architect work, then certainly that would be covered. But I think the thing that – what we're going to be talking about here is the fact that under the arising out of standard, if you interpret that to be exactly the same for both clauses, it really – there is no coverage. It's only if you narrowly construe the phrase arising out of and recognize that there can be multiple causes. One cause may be the professional work of Patrick Engineering, and another cause would be Commonwealth Edison's work. And if Commonwealth Edison's work was not professional, was not architecture and engineering services, then that would be covered. Is there any question that Commonwealth Edison was excavating these poles at someone's direction other than their own? Well, I mean, when you say someone's direction, you mean somebody told them where to excavate? No, I don't think there is. There's no question about that. They just didn't walk in and say, oh, they're doing some work. We're going to excavate those poles. Exactly. We needed to go in. And, of course, that's why we asked for – that's why the contract asked for this kind of additional insured coverage. And I think it's important to keep in mind what was called for. One of the points that this district has made many years ago is that where an insurance contract acknowledges that it is being brought pursuant to a contract, you have to interpret the contract that brings it within coverage and the insurance policy together. In Truck Insurance Exchange v. Liberty Mutual, the second district case from 1981, 102-LF-324, the court held that where a lease agreement specified that there would be coverage if required in a lease, you had to construe the lease and the policy together. Similar in Mobile Oil v. Maryland, the first district case from 1997, the court said when an insurer acknowledges providing insurance pursuant to a contract, between the insured and the third party, the contract is incorporated into the policy and the documents are construed together. Here, Commonwealth Edison required very broad coverage. Commonwealth Edison required CGL coverage providing a million dollars in coverage. It specified that the coverage could not contain any policy or endorsement wording that negated coverage to ComEd for its own negligence. It specified that it had to have an additional insured provision. Making ComEd excess and the additional insured coverage primary and non-contributory. It specified that it had to have completed operations coverage. The insurance policy specified that in order to have additional insured coverage, it had to be required by written contract. It also specified that the additional insured clause only applied where the written contract specifically required that completed operations coverage be required in the policy. So this policy is acknowledging that there's a contract out there. It is effectively incorporating the contract from ComEd and Patrick Engineering into the policy. Your argument is that we should take this a step at a time. Even the way you've divided your argument today, we're to look at the additional insured first. Once we find an additional insured, then we look to the exclusion. Correct. Now, I'm sure counsel's argument is going to be, we're supposed to read the terms of this policy in conjunction with one another. Well, if you read them together the way he wants to read them together, then you will find that the additional insured clause is meaningless and it's an empty promise. And the additional, I mean, the additional insured provision in this policy is a provision that has been interpreted many, many times by this court and other courts in Illinois, has always been interpreted broadly. Does that mean my time is up? Mm-hmm. Do you want to finish your thought? Well, okay. And it's always been interpreted broadly. But if this, if, but the professional liability exclusion should be narrowly construed because exclusions have to be narrowly construed. So on that, I would ask that you reverse the judgment of the trial court. Thank you, Judge. Counsel. Good morning. May it please the court. My name is Brian Armstrong. I represent Patrick Engineering. Justice Burke, very quickly, just to address the question you asked, Old Republic conceded in their brief that you have to determine additional insured status before you examine coverage. So while they may say that you have to read the policy together, read it as a whole, they acknowledge that it's a two-step process. The Illinois Supreme Court has told us how this case has to be analyzed. In the Globe indemnity case, also the appellate court cases, the Atchison case and the Hooks case, make clear that because of the separation of insurance provision and policy, we have to examine ComEd's activity and the allegations of ComEd's actions, not those of Patrick's. I know counsel touched on this. But those cases make clear that we have to treat ComEd as if it had its own distinct insurance policy, which means the allegations of the Village of Lombard's underlying complaint have to be compared against the policy and specifically the allegations of ComEd's conduct, not Patrick's conduct. The cases that we cited in our brief, the two federal cases, we all acknowledge these are federal cases. They're persuasive only, but I think they're very persuasive because they do involve commercial general liability policies. They do involve professional services exclusions. And, in fact, in the Shorenstein case, the professional services exclusion, I think, was even broader than the exclusion in this case. But those cases still find, that case and the City of Chicago case, those cases still find that we have to look to the allegations of the additional insurance conduct to determine whether the additional insured is covered. Even if the named insured was providing professional services that would be excluded under the professional services exclusion, it doesn't mean that the additional insured has no coverage because of that, because if the additional insured was not providing professional services, the exclusion simply doesn't apply to the additional insured. Why can't we just look at it and say excavation is not, excavation of holes is not an engineering, architectural, or whatever the other, surveyor issue. It doesn't require special knowledge or special expertise. It's running a bulldozer and hitting a pole. I think we can and I think we should. I think that's what these cases that we cited require. There are no allegations that ComEd performed any professional services. The only allegations are that they performed excavation work negligently or they operated excavation equipment negligently. I don't think there's any dispute that that does not involve professional services and that's all we have to look at. And I'll acknowledge that to run that equipment you need special licensing, but it's not considered professional or is there any place where it's considered professional that you're aware of? I don't think there is. And the professional services that are contemplated by an insurance policy, by a professional services exclusion, are things that require, I would say, engineering. That's the first example that comes to mind. Physics or chemistry? Survey. Those are some of the examples that are set up not operating an excavation machine. Now, the professional services exclusion in this case does not clearly exclude coverage for ComEd, even where Patrick performed professional services. That's the standard that they have to meet. The exclusion has to be clear and free from doubt, and that's certainly not the case here. And if we take a broader view of the purposes of a general liability policy, the purpose is to insure someone for causing damage to a third party's property. That's exactly what Patrick and ComEd sought coverage for ComEd for in securing the policy and in securing ComEd as an additional insurer, and that's all the coverage that they're asking for in this case. Older publics covering ComEd in this case also is consistent with the professional services exclusion, because, as we just talked about, the type of work that ComEd did does not involve professional services. So the professional services exclusion really simply isn't implicated once we apply the separation of insurance. All right, but then they're arguing, but for the professional services, ComEd wouldn't have been there. How do we respond to that if it's so straightforward? Because Part 4 seems pretty straightforward as well. Well, but in interpreting an exclusion, the language has to be narrowly construed, not broadly construed. In interpreting a causation requirement in a provision that provides coverage, that has to be broadly interpreted. But when we're interpreting a causation requirement in an exclusion, that has to be narrowly construed. And, in fact, one court in Illinois actually has acknowledged the different construction of the very same language arising out of in a provision that provides coverage as opposed to a provision that excludes coverage. And that case is Oakley Transport, Inc. v. Zurich Insurance Company. It's a 1st District case from 1995, 271 Ill. F. 3rd, 716, excuse me, Unit 721 and 722. The court acknowledges that the very same language has to be interpreted differently based on whether it's in a provision that provides coverage or a provision that excludes coverage. In a provision that excludes coverage, it has to be narrowly construed. So covering conduct here is consistent with the purposes of the policy and also consistent with the purposes of the exclusion. And, again, I think the bottom line here is, because of the separation of insurance provision, we have to examine the conduct alleged by ComEd separately and independently from Patrick's conduct. And when we do that, there isn't any question that ComEd did not provide professional services. So, for those reasons, I would ask that the court reverse the trial court and enter judgment in favor of Patrick and ComEd. May it please the court. Good morning. My name is Christopher Bell. I represent Oakley Public General Insurance Company. And to get to the heart of this matter, what we've heard so far from counsel is an incomplete analysis, actually. This case really is a simple reading and interpretation of the exclusionary language of the professional liabilities clause. What ComEd and Patrick is focused on is the fact that ComEd has not performed professional services. But you look at the actual language of the clause, which is at record site 1130, and the clause actually says, this insurance does not apply to bodily injury, property damage, or personal advertising injury arising out of the rendering of or failure to render any professional services by you or any engineer, architect, or surveyor who is either employed by you or performing work on your behalf in such capacity. There are two prongs of this exclusion. One, the coverage is excluded if the additional insured is performing work itself that is professional liability of professional services. And the second prong is if the client arises out of any professional services work being done on that putative insured's behalf. And so what the real dispute in this case is how to apply the separation of insurance clause to this exclusion. Old Republic's position has been that since the terms you and you are specifically defining this policy to be the named insured, which is Patrick, that when you look at that clause, even as an independent insurance policy for ComEd, those definitions don't change. So what you have is ComEd is a policy that says professional liability services performed by Patrick or an engineer, architect, or surveyor who is either employed by Patrick or performing work on Patrick's behalf. If that's true, what did you cover? What does this insurance policy cover? This is a general liability policy which covers negligence, premises liability, general types of negligence. The purpose of this exclusion was specifically not to morph this into a professional liabilities clause. And ComEd and Patrick understood this because of their contract between the two. But my question was, what does it cover? It covers property damage, bodily injury, exactly what I said. By whom? By Patrick or any other additional insured or named insured to a third party. Well, to be an additional insured, it would have to arise out of Patrick's conduct. So if Patrick leaves a surveying rod out on the thing and someone trips over it or ComEd then moves it and someone trips over it, I mean some kind of far-out negligence thing that you can think of. That's what you're talking about. So, I mean, and that's what Judge Buckwell was talking about in Shorenstein is, isn't that basically no insurance at all when the company is hired to do engineering work and ComEd is only brought in unless they're doing engineering or Patrick's doing engineering work for ComEd, then to exclude this type of coverage for ComEd, isn't that basically insurance for nothing for ComEd? And that additional insurance is meaningless. Well, it's not insurance for nothing. It's not illusory. And the reason is there are circumstances under which the coverage could arise. For example, if a worker is on a lunch break and parks his truck on the site in a certain way, which causes another party to crash and damage some property in the villages, if ComEd gets sued for that as an additional insurance.  Looking at the purpose of obtaining the insurance, we can go to the contract between Patrick and ComEd. And you were aware of that, or Old Republic had some knowledge of that contract when they wrote this policy, correct? I am not sure of that fact. Well, why would you write a policy if you didn't have an underlying understanding of why you were putting an additional insurance on it? These policies are written on standardized forms to cover multiple situations, so their specific contract was not contemplated at the time that this language was created. These are sort of like products that you go to a store and buy. These are insurance products that are selected for whatever purpose the purchaser, the insured, is needing. And if they'd like to have different exclusions or different coverage, if they want this exclusion out, there's premium adjustments that come with that, and they can purchase that product. These are basically standardized forms, which have been interpreted throughout the years by the courts, standardized endorsements that can be picked and choose like products and based on what you want. So this particular exclusion for professional services, the purpose of that is to exclude professional liability claims. And the contract between Patrick and ComEd, at Record State 1313, Section 8.1.5, ComEd actually required Patrick to purchase both a commercial liability policy and a professional liability insurance with a combined single limit of not less than $1 million. So the contract between these parties contemplated they would have two types of insurance. So the parties themselves, it shows the intent of the parties themselves that there would be professional services covered by a professional liability policy and these other situations covered by a general liability insurance as a stopgap to protect whatever did not fall within the professional liability scheme. Was ComEd an additional insurer under the professional liabilities policy? I'm not even sure that there is a professional liability policy, but it does require them to get it, and if they didn't Well, requiring Patrick to walk onto the job site with one is different than making ComEd an additional insurer for Patrick's negligence or ComEd's negligence, I should say, arising out of Patrick's actions. Correct. So to answer your question, my reading of this contract is that ComEd was to be made an additional insurer on the professional liability policy that was to be purchased by Patrick. Can we take this a step at a time? Do you acknowledge, as it appears that your brief does, that you first look at whether this is an additional insured situation? Correct. Okay. And there's no doubt, well, I shouldn't say that. Is there a doubt whether this is, that ComEd's an additional insured based upon the complaint and the third-party complaint? No. Okay. So now that we have that settled, now we move to the separation of insured provision. Under GLOBE, we're supposed to look at this as if it's each of these entities separately, correct? Correct. So now how do we then avoid the separation or the exclusion for ComEd? ComEd's not alleged to be engaged in any type of professional services. Correct. And here we have a situation arising out of, potentially, at least in part, arising out of Patrick's actions, this whole mess. Correct. And then we also have ComEd, who theoretically could have smashed through the pipe the first time because of Patrick's negligence, but then continued to smash through the pipe three more times, maybe because they should have figured out we shouldn't be smashing through this pipe anymore. So you could have multiple causes. You could have Patrick's negligence and you could have ComEd's separate negligence. Why is ComEd's, after we've gone through now this step-by-step process under GLOBE, why is ComEd's negligence not covered by this policy? Because the third-party complaint filed by ComEd against Patrick does not contain any allegations that they were in part responsible. The allegations are that the entire claim of the Village of Lombard against ComEd was entirely caused by the professional services rendered by Patrick. But we have to look at both complaints in total. I mean, I don't think we look at just, oh, one complaint says X and the other complaint says Y, so we're only going to look at the X one for this. We've got to look at both complaints and read them together. And one complaint from Lombard says, ComEd, you were negligent. The other complaint from ComEd, the third-party complaint, says, Patrick, you were negligent. Now, we read those two together, and, I mean, there's a reasonable possibility for multiple causation, as pointed out by, you know, Sean, Steve, and some of these other cases, isn't there? Well, two points about that. Number one, even if there were multiple causes, the arising out of language and the exclusion would still preclude the claim. Because any – the exclusion arising out of professional services is that if it's in part arising out of professional services, it's excluded. That's the intent of this passage. The second thing about Shorenstein, Shorenstein's analysis, it was a federal district court case, number one. Number two, the analysis was incomplete because it did not address both prongs of the exclusion, which was similar to the one here. It addressed only whether the putative insurer itself performed any professional services, not whether it hired anyone to do it on their behalf. The analysis was just incomplete. Well, I think this is the crux of the case, then. What you're saying is that that exclusion says even if it's arising in part out of professional services, the exclusion applies across the board. Correct. I think I'm a butthole. We may have a different approach. I'm just guessing. I'm sorry? I think I'm a butthole. We may have a different approach to that. Commonwealth Edison is doing labor, strictly labor. So how is labor a professional service? I don't want Commonwealth Edison charging me more to go out there and excavate that pole. I don't want them to charge a professional fee. They're doing labor. How is that not separate and apart from what Patrick's responsibilities are? Well, it is separate, but the only reason that ComEd has coverage under this policy is to ensure the avenue or the doorway through which they get coverage is only if it arises in part out of Patrick's work, which is undisputedly professional services in this case. So what essentially ComEd is trying to do is get professional liability coverage under GL policy by ignoring the insurance actions or conduct which got them into the policy in the first place. You have to read the insurance policy as a whole, and you can't ignore facts. You know, of course, there are facts under Pekin v. Wilson, alleged in the other pleadings and whatnot. But those facts cannot be applied to just one part of the policy in order to read the exclusions. The policy has to be interpreted as a whole, and all the words have to be given, meaning given effect. And they also have to be read with each other to see how different provisions may affect others. And so for ComEd to even get coverage in the first place, it has to go through the door of Patrick's professional services. That fact that the claim arose in part, at least, because of Patrick's professional services cannot then be ignored to say, well, Patrick's professional services, which were done on behalf of ComEd, will not trigger this exclusion. Is the analysis in Shorenstein and also the analysis in Chicago v. St. Paul, in your opinion, entirely unreasonable? I don't think it's unreasonable. I think it doesn't apply. I have mentioned about Shorenstein the incomplete analysis. Here's the other aspect of this case that I don't think we've discussed too much, is that when you're applying the separation of insured clubs, you're trying to change the definition of you and your and that exclusion to mean ComEd, where it's specifically defined in the policy as the named insured, which is Patrick. And none of the cases, Shorenstein, City of Chicago, none of those cases hold that when you are going to look at the policy as if it were a separate policy for that period of insured, you're going to change definitional terms in the policy. Those cases do not hold that. There is no case law exactly on that point. And that's what we argue, is that even if you were to say this was a product purchased by ComEd off the insurance shelf, when they open it up and look at it, what they bought was a policy that defined you and your as Patrick. So they bought a policy that excludes professional services performed by Patrick. The exclusion in Shorenstein was broader than this one. It was. It was broader. So if you have a broader exclusion, that means more things and more people and more events are excluded. Here you have a narrower exclusion that you want us to interpret more broadly than they did in Shorenstein. But in Shorenstein, there was no discussion of a fixed term, you or yours, meaning a particular named insured like there is in this case. Those definitional terms make a difference. And that's why insurance policies have to be interpreted by a particular language in each policy. And while case law may be good guidance on some aspects of the language, each policy has to be read on its own terms. And the terms of this are very different than the terms discussed in Shorenstein and the city of Chicago. So our argument is that either way you want to apply the separation of insurance clause, if you want to conform to the definitions that are specifically included in this policy and read you and yours as Patrick Engineering, the clause definitely applies. You exclude coverage. If you want to adopt ComEd's position that you and yours should mean ComEd, should be ready to mean ComEd in this provision, it still excludes coverage because the services by Patrick were professional services performed on behalf of Patrick. And those services give rise to this claim by the village. Any final remarks? The only final remark I would make is in response to Shorenstein. It seems to be the main case there that the appellants are relying on. The main, the last remark I would make basically on Shorenstein is that I think it's important for us to make sure that we have a clear understanding of what we're talking about. The only thing I would say on that case is that, as I said before, there was no analysis of the second prong. The court merely looked at whether Shorenstein had performed professional services and ignored the second prong, which under a proper analysis would have excluded that claim as that language was construed in that policy. Thank you very much. Do you wish to reply? Yes. A couple of things to address. First, ComEd was not named as an additional insured on Patrick's professional liability coverage because the contract expressly did not require that. In fact, I'm looking at page 3085 of the record, and the only insurance policies that ComEd required that Patrick name ComEd as an additional insured on are the workers' compensation policy, the commercial general liability policy, the automobile policy, and the excess umbrella liability policy. Now, the contract requires that Patrick carry professional liability insurance for itself, but section 8.3 of the contract, which tells Patrick what policies they are required to name ComEd as an additional insured on, expressly excludes the professional liability coverage. Even if they were named as an additional insured, the insurers would certainly have the right to choose under which policy they could tender the claim. So I don't think the existence of the professional liability coverage helps Old Republic. It's obvious that based on the arguments we heard from Old Republic's counsel, it's clear that they aren't providing any coverage under their interpretation of the policy. It's simply illusory. For them to suggest that there is no coverage because ComEd's liability allegedly arises out of Patrick's work completely contradicts the requirement in the additional insured endorsement that ComEd isn't even eligible unless the work arises out of Patrick's work. Again, it brings us to the different constructions that the courts have provided for us in a provision that provides coverage versus a provision that excludes coverage. To read the policy the way Old Republic suggests leaves ComEd with no coverage. It's simply illusory. Also, again, the professional liability exclusion does not clearly exclude coverage for ComEd, even where Patrick and ComEd together could have caused the damage. It's their obligation to make that exclusion clear. They didn't do that. In fact, that's the problem that the district court had in the City of Chicago case. Counsel argues that they did make the exclusion clear by putting in the language, you and your, in the policy. And that's the difference between this case and Shorenstein. Well, but again, the language in Shorenstein is broader, and if that's the interpretation, the coverage is illusory. The bottom line, as pointed out, may I finish? Sure. The bottom line is that, at a minimum, Patrick and ComEd's interpretation of the provisions is plausible. And given that it's plausible, with the construction that the courts require that we give the policies, ComEd is entitled to a defense. So, for those reasons, we'd ask that the court reverse the trial. I have a question for you. If the language arrives out of Patrick's services, professional services, could that be interpreted to simply limit the scope of a claim? In other words, ComEd couldn't come in and say, well, we were doing some work over here on the side, but rather this area in Lombard that was under the purview of the professional services of Patrick. I think it could be. Thank you very much. Thank you.